King, J.
The defendant in error, Nancy E. McCrory, in 1877, made a lease, known as an oil and gas lease, to one C, Underwood, by which she leased to the lessee, his heirs and assigns, her lands, comprising about five acres, and the right to drill and operate for petroleum oil and gas.
One of the conditions of the lease was, that if oil was produced by these operations, the lessee agreed to give to ■the lessor the one eighth part of the oil, and deliver the same in tanks free of expense; and should gas be found in sufficient quantities to justify marketing the same, the consideration in full, to the party of the first part, .should be .three hundred dollars per annum for the gas from each well as long as it should be sold therefrom.
*306 This lease was afterwards assigned by Underwood to The Ohio Oil Company, and this action was brought in the court of common pleas by Nancy McOrory to recover from The Ohio Oil Company the amount which she claims is due for the use oi the gas from a certain well on her premises. The amount she claims is six hundred dollars, which would be three hundred dollars per year for two years.
The defense was that thewelbwas an oil well essentially; that there was a little gas in it, but only about the amount .that is usually found in oil wells of .that character, and that it had been used, so far as it had been used at .all, by the defendant to operate the well. That the defendant had other wells on other properties near and adjoining, and that it had piped the gas into a common pipe and used it to operate all of the wells, but there was not more gas from this one well than enough to operate it; in fact, not enough to operate it at all times.'
The case was tried, and a verdict rendered for the plaintiff for the amount of her claim.
It is claimed that the verdict and judgment are wrong, for several reasons: That in the course of the trial, im-
proper evidence was admitted. That the court erred in its charge, and that the verdict is not sustained by the evidence.
I shall notice these several grounds of error-in the order that I have named them.
A great many exceptions were taken throughout the record. The first one which I desire to notice is exception No. 7 on page 8,' in which Mrs. McOrory, the plaintiff, being a witness, was inquired of whether she had any conversation with a certain Mr. Floyd, or Mr. Noggles, during the time they had charge of the pumping of the wells, relative to the strength of'the well on her premises for gas from November 16th, 1892, to November 16th, 1894, which' is the period named in the petition for which she seeks to recover. That was objected to, objection overruled and ex *307 ception taken, and the witness answered that they said to her that it was a good well. The evidence showed that Floyd and Noggles were pumpers, pumping the wells belonging to the defendant. Now, it is enough for me to say that nothing is shown here to justify the admission of this testimony. That the statement of mere employes, who are charged with specific duties, cannot be offered in evidence to bind the defendant company; that these employes had no such control or authority as would make their admissions competent.
On page 27, exception No. 19, this question was asked:
“Now then,if you know the quantities of gas a well should produce to justify marketing the same, you may state to the jury what amount of gas that would be.”
That is objected to, overruled and exception.
The witness answered:
“I would consider gas that would be sufficient to run from five to ten or twelve stoves was the amount of gas that would guarantee a company for to lay a line at the cost of forty of fifty dollars for to run the gas and conduct it onto another farm, to enable them to produce oil on other premises; that is what I would consider a paying well,- — -in paying quantities.’’
We think that objection ought to have been sustained, and the answer of the witness ruled out, as it seems to be a long rambling argument rather than the statement of a fact.
The question as to whether a well produces gas in paying quantities, is a question for the jury to decide, and the witness could not be called to decide it for them. The witness might be called to give them evidence of facts which would enable them to arrive at a conclusion as to what a well should produce to justify marketing, but a witness cannot be asked the very question that is involved in the litigation; for, if that were so, it would not be necessary to' have a jury.
*308 On page 34, exception 24, substantially the same question is asked, though slightly varied:
“Now what would you say from your experience as to whether a well is producing gas sufficient to justify marketing, when it produces a flame, upon being set afire, eight or ten feet high?”
This was objected to, objection overruled and exception, and the witness answered: “I should say it would”. The same reasoning applies to that question as to the one preceding it.
On page 38 are two exceptions involving the same question:
' “I will ask you to state, from your knowledge and experience, as to whether gas, which, when lighted, produces a flame from eight to ten feet high, constitutes gas in sufficient quantities to justify marketing the same.”
That was objected to, overruled and' exception taken. The witness answered: “Yes, sir.”
A motion was made to strike out the answer, which was overruled, and an exception taken. The same ruling applies to that. We think it was improper.
The next question I will notice is in relation to the charge of the court. Several exceptions are taken to the charge of the court, only one or two of them I need notice, and in doing that I will say that the defendant alleged, among other things, in addition to what I have stated, that there prevailed a custom in existence at the time of making this contract, well known to the parties and people generally, that a person operating under one of these leases, would have the right to use so much of the gas produced from any well as would be necessary to operate that well. There was a denial of that custom in the reply, and upon the subject the court said certain things to the jury very proper to be said, that the burden was upon the defendant to establish it by a fair preponderance of the evidence, and unless he did so establish it,the defense is not maintained.
*309 Proceeding further, the court said:
“In order to make a local custom good, it must appear that it was long continued, without interruption, acquiesced in, reasonable, certain, compulsory and known to the parties to be affected thereby.”
The words “compulsory and known to the parties to be affected thereby,” are excepted to, and we are disposed to think that the court must have been misled in giving that definition, as I do not find any definition that substantially complies with that.
In the 2nd Circuit Court Reports, page 881, is a case in which the second paragraph of the syllabus reads as follows: “To make a local custom good, it must appear that it was long continued, without interruption, acquiesced in, reasonable, certain, compulsory, and known by the parties to be affected thereby;” and I take it, the court took its charge from that sjllabus, but a reading of the opinion in that case shows that the court never said anything like that syllabus.
The court says: ■
“To make local custom good, it must appear that it was long continued, without interruption, acquiesced in, reasonable, certain, and known to the parties to be affected thereby,”
Leaving out the words “compulsory,” and cite the case of the Steamboat Albatross v. Wayne, 16 Ohio, page 517, and this case does substantially, though not quite, support the opinion of the circuit court. It does not give as full a definition as the circuit court did.
The court say:
“A custom once established becomes a law, as to the particular subject to which it relates. And being of this nature, the legal presumption at once obtains that the contract was made in reference to it, because it is in the nature of a law. But to give it this force, notoriety, uniformity, reasonableness, and public acquiescence in it, are requisite.”
*310 Now,in that opinion-there is not a suggestion'that it must b.e known to the'parties, and we do not think it in all cases is necessary. In the case of Lowe v. Lehman, in 15 Ohio St., page 179, the court charged the jury upon the subject of custom. The question there was a contract to lay brick at so much per thousand. There was no dispute as to the price or terms of the contract, but when they came to count the brick, the bricklayers claimed a custom authorizing them to measure the wall on the outside and inside, deducting for all openings in the wall.
The defendants asked the court to instruct the jury:
“That if the usage was generally adopted by the brick-masons as late as 1854, and the defendant was not a member of the trade connected therewith, except as a citizen, he must have actual notice of its existence before he could be bound by it; and that the presumption of such notice might be rebutted by evidence that he did not, in fact, have knowledge of the custom,”
That, the court below refused, and instructed. the jury:
“That in the absence of any custom, the words ‘a thousand brick,’ must be taken in the ordinary sense, and only the actual number laid in the walls must'be allowed for, to be ascertained by actual count, of by some other method, giving the actual number as nearly as possible! But that these words might, by a prevailing usage, acquire a different meaning, and the jury might infer that they were used in that peculiar sense and give effect to them accordingly.That the usage, in order to have such effect, however, must be shown to have been reasonable, certain, uniform, and generally acquiesced in and'understood by the community. That if the usage was ancient, the presumption would be stronger; but, although it might have prevailed only since 18,54, yet, if it had been so general and -universal as to give a peculiar meaning to those words when used in the contract, in the general understanding of the community, and-contracts were made in view of it, the jury might interpret the contract with reference to it, even -though it - appears -that the defendant had no knowledge of such usage.”
To the refusal to charge as requested, and to the charge *311 as given tbe defendant excepted. Tbe first question was upon the admissibility of proof relating to custom, and it was held that the proof was competent; and second,that the court erred in its charge to the jury, and the court say:
“We are not prepared, from any thing disclosed in the record, to say that the charge was erroneous. The court left the whole matter to the jury. If they found the defendant, in fact, ignorant of the custom — and there seems to have been no evidence directly to that effect, or to refute the presumption of his knowledge — the court left it to them to say, whether the custom, though only of recent date, was so general and universal, and so commonly known and acted upon, as to shut out the right to plead ignorance of its existence. Surely there are such customs — local though they be. The nature of this custom is fully shown, but the evidence of its generality and universality was left to the jury, and is not set out in the record. We must assume that the jury found the custom to be such as indicated and required in the charge of the court. If they did, we hold that it is not error for which the plaintiff in error ought to be allowed to reverse the proceeding; that the jury, under the instructions of the court, held him estopped from denying the knowledge of its existence. If a party stupidly shuts his.eyes to what is ‘universally’ known in his community by others,, there could be no safety in allowing him to shelter himself under the plea of ignorance.’’
And the court affirmed the judgment.
In the syllabus of that case it is said:
“It is not error in such case to instruct the jury, that if they find such custom to have been certain, uniform, and generally acquiesced in, in the city where the parties resided, and where they made the contract,they may interpret the contract in the light of the custom, although the custom was of only seven years standing, and although the plaintiff had not actual knowledge of its existence.’’
Now we think the rule laid down by the court is much ■stronger and not as well explained as that by the supreme court on this subject, and that it was error by the court on that subject.
*312 The principal objection which may be found to the charge is the manner in which the court submitted the real question in the case to the jury.
The court said:
“Upon the question for the jury of determining whether this was a well that produced gas sufficient to justify marketing the same, a test would be whether or not the income derived from the gas from the well would be equal to the rental that is stipulated in the contract to be paid for the well, in determining whether or not the well did produce gas sufficient to justify marketing the same,”
That is the only rule which the court gave to the jury as to their determining whether this well did produce gas sufficient to justify marketing. In the balance of the charge, the court say that in order to find for the plaintiff, they must find by a preponderance of the evidence that the well did produce gas in sufficient quantities to justify marketing, and the court also gave some other instructions with reference to the uso of gas. It occurs to us that the jury should have been instructed a little more particularly as to the evidence they were to consider bearing upon the question, and that the rule whether it produced gas sufficient, is not quite enough, Every case must be determined by the facts and circumstances surrounding it. If one well were drilled miles away from any known market for gas, that should be considered. It is well known that gas is an article that you cannot bottle up and load in a wagon and carry to market. It has to be conveyed in other ways, and whether there is a demand, and what it would cost to supply that demand, are elements which should enter into the question of cost to justify marketing — not whether it produced gas enough to pay three hundred dollars a year.
That is not the only question. The cost of marketing is a material element to be considered. It was claimed by the plaintiff, that there were people around there who used *313 gas in stoves, and it would be possible for a man to have gone around and secured people to use this gas, and that there was gas enough to furnish fifteen or twenty stoves. How much would that have cost, and how much time would it have taken to supply the gas and keep an account of it? Was this company boundjto furnish a market for the gas? We think not. Clearly the obligation was not upon the lessee to furnish a market, but he is to take things reasonably, as they existed. If the market is there, he would have no right to waste the gas and allow it to escape, if it was produced in quantities sufficient to justify selling it.
One element is the rental of three hundred dollars; another element, how far would it have to be piped, and what would it cost, and the amount of revenue to be derived from it?
The courtjhaidjjto the jury:
“That the fact that gas from this well was used in connection with the gas from wells on other lands to operate this well and other wells, by means of a central boiler located on other land, does not entitle the plaintiff to recover, and your verdict must be for the defendant, unless it appears that this well produced gas enough to justify marketing the same.’’
Now, that seems to be substantially what the same court said to the jury in^the case of Hankey v. Kramp in 12th Circuit Court Report, page 95, and, as we said in that case, we consider the charge of the court on that subject was right.
Thistbrings us*to the question as to whether this verdict is sustained by the evidence or not. Upon two grounds we think this verdict is not sustained by the evidence. There was some evidence to show that there were two farmers who might have used this gas, but there was no evidence to show how much it would cost to market it. The plaintiff relied upon her right to recover solely upon the evidence that the gas was conveyed into a common pipe and used in operating the wells.
James O. Troup, Attorney for Plaintiff in Error.
James & Bever stock, Attorneys for Defendant in Error.
The court charged the jury:
’ “The use of the gas from the well by the defendant to operate the well itself, even although the boiler under-which the gas was consumed for that purpose be on other lands, does not entitle the plaintiff to a verdict, and if you find that the gas was so used, and there was not produced a sufficient quantity to justify marketing, your verdict must be for the defendant.'’
Upon that subject there was no evidence whatever. There was no evidence upon which the jury could have rightfully passed to determine whether this well produced gas enough to pay'the expense of marketing it.
We think that the evidence failed to establish, as a fact, that this well, produced gas sufficient to justify marketing it in the situation in which the well was.
.In another point this verdict.is not sustained by the evi-' dence. The defendant set up this custom, and six or seven witnesses testified to its existence and continuation-for years, and the fact that it was general and uninterrupted, and no witnesses íd the case disputed it. No witness was called by the plaintiff to dispute it.- The plaintiff herself did not dispute it. She testified that she never heard of any such custom. She did not testify that it did not exist. No one testified that the custom was not in -existence in that community, and had not been so for a number of years. Upon the defense set up in the answer, the evidence was all one way; that the custom existed, and while we are not prepared to say it was not necessary to show that custom, we will say that in this record it was shown, and not contradicted.
For both these reasons we think the verdict was contrary to the evidence, and the case will be remanded for a new trial.